# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**JESCO CONSTRUCTION COMPANY**            **PLAINTIFF**

**VS.**            **CIVIL ACTION NO.** 1:20-cv-147-HSO-JCG

**WELLS FARGO BANK, N.A.**            **DEFENDANT**

## COMPLAINT

COMES NOW **JESCO CONSTRUCTION COMPANY**, Plaintiff, and for claims against **WELLS FARGO BANK, N.A.**, Defendant, states the following:

## PARTIES

1. JESCO Construction Company (JESCO") is a corporation existing under the laws of the State of Louisiana. JESCO is qualified to do business in the State of Mississippi, and its principal place of business is located at 46 Flint Creek Road, Wiggins, Mississippi.

2. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is, and at all times relevant hereto was, a national banking association chartered under the laws of the United States, and may also be incorporated in the State of South Dakota, and its principal place of business and corporate headquarters are located in Sioux Falls, South Dakota. Wells Fargo is qualified to do business in the State of Mississippi. Its agent for process is Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110.

## OVERVIEW OF THE CLAIMS

3.      Wells Fargo accepted and paid unauthorized electronic payment orders on JESCO's two checking accounts with Wells Fargo, and made unauthorized funds transfers of JESCO's monies to third parties. The payment orders were suspicious and fraudulent, were not authorized by or effective as to JESCO, and are not at all enforceable against JESCO. Wells Fargo has refused to refund and pay to JESCO the funds that it wrongfully transferred and paid to the third parties. JESCO seeks to recover the principal amount of those unauthorized funds transfers, actual damages, punitive damages, interest, costs and attorney's fees.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      The Court has personal jurisdiction over the parties. Wells Fargo entered into one or more contracts to be performed in the State of Mississippi, it has committed torts in Mississippi, and it is conducting business in Mississippi.

6.      Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and division.

## FACTS

7.      During June 2016, JESCO opened a checking account at the Courthouse Road branch of Wells Fargo in Biloxi, Mississippi (the "First Checking Account") for which there was an account agreement between Wells Fargo and JESCO.  During the period of June 2016 until September 2019, JESCO, as a customer, deposited its monies into the First Checking Account, and had authorized withdrawals, debits and/or funds transfers from that account.  Monthly, Wells Fargo mailed to JESCO a copy of the bank statement for the account for the prior month.

8.      On September 18, 2019, John Shavers (the CEO of JESCO) received a call from a person with Wells Fargo's fraud department who said that he thought that JESCO's account had been compromised.  The Wells Fargo representative asked questions about account transactions involving electronic charges to ("payment orders") and funds transfers from the First Checking Account to or for the benefit of <u>Michael Karkenny</u>, <u>Stanley Gono</u>, and <u>Richard Jackowski</u>, and whether JESCO or Mr. Shavers knew any of them or had done business with any of them.  Mr. Shavers told Wells Fargo's representative that he had never heard of those persons, that JESCO did not have any account or business with those persons, and that JESCO disputed all of the charges by and funds transfers to or for those persons.  The Wells Fargo representative told Mr. Shavers to go to a Wells Fargo branch and close the First Checking Account.  The Wells Fargo representative also told Mr. Shavers that "we (meaning Wells Fargo) know Michael Karkenny."

9.      The unauthorized charges, payment orders and funds transfers that Wells Fargo contacted JESCO about began on August 19, 2019, and as of September 18, 2019 amounted

to approximately **$185,000.00**. <u>None</u> of the charges and payment orders by and funds transfers to or for the benefit of Michael Karkenny, Stanley Gono, and Richard Jackowski was authorized by or effective as to JESCO, and none is enforceable against JESCO. All of the said charges, payment orders and funds transfers were unauthorized by JESCO and, as Wells Fargo suspected, were fraudulent.

**10.** On September 19, 2019, Mr. Shavers went to the Wells Fargo branch on Courthouse Road in Gulfport, Mississippi to close the First Checking Account. He dealt with Ms. Necaise, a Wells Fargo employee at that branch, who said that she knew what had happened regarding the First Checking Account, she would deal with it, and the bank had it under control. While Mr. Shavers was present, Ms. Necaise made several phone calls to other Wells Fargo personnel (presumably Wells Fargo's fraud department) about the unauthorized charges and funds transfers. In answer to Mr. Shaver's questions, Ms. Necaise told Mr. Shavers that he did not need to do anything else to dispute the unauthorized charges and funds transfers other than opening up a new checking account with Wells Fargo. Mr. Shavers reasonably relied on those statements by Ms. Necaise.

**11.** After those calls concluded, Mr. Shavers had his wife come to the Courthouse Road branch of Wells Fargo to close the First Checking Account and open the new checking account (the "Second Checking Account") that Ms. Necaise said JESCO needed to open. Among other things, Ms. Necaise told Mr. Shavers and his wife that Wells Fargo would transfer the balance of the First Checking Account to the new Second Checking Account, all of the unauthorized charges and funds transfers would be credited to the new Second

Checking Account, and there was nothing else that Mr. Shavers needed to sign or do about the unauthorized charges and funds transfers. Ms. Necaise said that she had tried to credit the amount of the unauthorized charges and funds transfers to the new Second Checking Account, but she and others in the branch were having computer problems, and she would do it the next day. Mr. Shavers reasonably relied on what he was told by Wells Fargo's said representative.

12.     After the Second Checking Account was opened, however, Wells Fargo accepted new payment orders and made additional unauthorized funds transfers of approximately **$98,000** from the Second Checking Account to or for the benefit of <u>Michael Karkenny</u>, <u>Stanley Gono</u>, and <u>Richard Jackowski</u> — <u>the same three people Wells Fargo knew were behind the unauthorized payment orders and funds transfers from the First Checking Account</u>. As to the Second Checking Account, none of the charges and payment orders by or the funds transfers to or for the benefit of Michael Karkenny, Stanley Gono, and Richard Jackowski was authorized by or effective as to JESCO, and none is enforceable against JESCO.

13.     JESCO learned about the unauthorized charges, payment orders and funds transfers from the Second Checking Account on Saturday December 7, 2019 when Mr. Shavers went into the Edgewater branch of Wells Fargo to cash a check on the account, and one or more Wells Fargo employees told him about the unauthorized funds transfers. Mr. Shavers disputed the unauthorized funds transfers from the Second Checking Account. An employee of Wells Fargo at that branch then called Wells Fargo's fraud department to report

the matter. Mr. Shavers spoke with the Wells Fargo fraud department representative who told Mr. Shavers that "we will put your money back in the account by Monday morning." Later that same day, the fraud department representative called Mr. Shavers and again stated that the monies would be put back in the Second Checking Account by Monday.

14. The following Monday and Tuesday (December 9 and 10), Mr. Shavers had further discussions with Wells Fargo representatives about the unauthorized charges and funds transfers from the Second Checking Account. One Wells Fargo representative stated that the bank was not going to refund the unauthorized transfers, but another Wells Fargo representative stated that the bank was liable for the unauthorized transfers.

15. During December 2019, Wells Fargo refunded approximately $15,000.00 to the Second Checking Account, but did not refund the rest of the unauthorized funds transfers which total **$269,304.46**.

16. Wells Fargo notified JESCO that it will not refund the rest of the unauthorized funds transfers because it contends that the account agreement with JESCO requires JESCO to report the unauthorized funds transfers "within 30 days" and JESCO "did not timely report." JESCO disputes that contention. Moreover, under Miss. Code Ann. Section 75-4A-204, any such reporting requirement for a refund of an unauthorized funds transfer is void, illegal and unenforceable. Alternatively, any such reporting requirement, if valid, was satisfied by JESCO, or waived by Wells Fargo, or Wells Fargo is equitably estopped to invoke any such reporting requirement.

17. The principal amount of the unauthorized funds transfers from JESCO's First

and Second Checking Accounts totals **$269,304.46**. Wells Fargo owes and is liable to JESCO for, *e.g.*, the amount of the unauthorized funds transfers, interest from the date of each unauthorized funds transfer, all fees and costs that it charged to JESCO arising out of the unauthorized funds transfers, and all other damages and costs incurred by JESCO.

18. JESCO has made several written demands on Wells Fargo to refund and pay JESCO the amount of the unauthorized charges and funds transfers, but Wells Fargo has refused to do so. JESCO has satisfied any conditions precedent for bringing this action.

## CLAIMS

### First Claim
### Unauthorized Payment Orders and Funds Transfers

19. The allegations of the preceding paragraphs are incorporated by reference.

20. The unauthorized payment orders that Wells Fargo accepted and the unauthorized funds transfers that Wells Fargo made and took from JESCO's two checking accounts were not authorized by or effective as the orders of JESCO, and are not at all enforceable against JESCO.

21. Under Miss. Code Ann. Section 75-4A-204, Wells Fargo is strictly liable for, owes and is obligated to refund and pay to JESCO the principal amount of the unauthorized funds transfers plus interest as provided for under that statute.

### Second Claim
### Declaratory Judgment

22. The allegations of the preceding paragraphs are incorporated by reference.

23.     If and to the extent that any account agreement between Wells Fargo and JESCO purports to require JESCO to report an unauthorized funds transfer within "30 days" in order to be entitled to a refund of those funds, then pursuant to 28 U.S.C. Section 2201 and F.R.C.P. 57, the Court should declare and determine that any such requirement is void, illegal and unenforceable under Miss. Code Ann. Section 75-4A-204.  Alternatively, the Court should declare and determine that any such reporting requirement, if valid, was satisfied by JESCO, or was waived by Wells Fargo, or Wells Fargo is equitably estopped to invoke any such reporting requirement.

### Third Claim
### Negligence and Gross Negligence

24.     The allegations of the preceding paragraphs are incorporated by reference.

25.     By paying the payment orders and making the unauthorized funds transfers from JESCO's First and Second Checking Accounts, Wells Fargo breached its duties to JESCO, failed to exercise the degree of care required of it under the circumstances, and acted unreasonably, negligently, and grossly negligent.  Wells Fargo knew, or by the exercise of reasonable care should have known, that the charges and payment orders by or for the benefit of Michael Karkenny, Stanley Gono, and Richard Jackowski were not authorized by JESCO, and were suspicious and fraudulent.

26.     On September 19, 2019, Wells Fargo had JESCO close the First Checking Account and open the Second Checking Account because of the unauthorized payment orders and funds transfers to or for the benefit of Karkenny, Gono and Jackowski.  At that

point, Wells Fargo knew that any payment orders by or for and any funds transfers to or for the benefit of Karkenny, Gono or Jackowski were fraudulent and were not authorized by JESCO. <u>Despite that knowledge,</u> Wells Fargo continued to accept payment orders and make unauthorized funds transfers from the Second Checking Account to or for the benefit of Karkenny, Gono and Jackowski. Wells Fargo's acts and omissions were negligent, grossly negligent, and a breach of its duties to JESCO. Wells Fargo's said acts and omissions proximately caused JESCO to lose the said monies that were transferred from its accounts, and to suffer damages and losses.

27.     Wells Fargo owes and is obligated and liable to refund and pay to JESCO the principal amount of the unauthorized funds transfers, interest thereon, plus all fees and costs that Wells Fargo charged to JESCO.

### Fourth Claim
### Breach of Contract

28.     The allegations of the preceding paragraphs are incorporated by reference.

29.     By accepting the said payment orders and making the said unauthorized funds transfers from JESCO's First and Second Checking Accounts, and then by refusing to refund to JESCO the amounts of the unauthorized funds transfers, Wells Fargo breached its account agreements with JESCO. Under the account agreements, Wells Fargo is obligated to refund or restore to JESCO the amount of the unauthorized funds transfers, but it has refused to do so. Wells Fargo's breach of its account agreements with JESCO proximately caused JESCO to suffer damages and losses.

30. Wells Fargo owes and is obligated and liable to refund and pay to JESCO the principal amount of the unauthorized funds transfers, interest thereon, all fees and costs that Wells Fargo charged to JESCO, and all attorney's fees and costs incurred in recovering the monies that JESCO is owed.

### Fifth Claim
### Breach of the Duty of Good Faith and Fair Dealing

31. The allegations of the preceding paragraphs are incorporated by reference.

32. Wells Fargo breached its duty of good faith and fair dealing that was implicit in its contracts (the account agreements) with JESCO. Wells Fargo's conduct in breaching and repudiating its contracts has been outrageous, in bad faith and violates standards of decency, fairness, and/or reasonableness. Among other facts, by accepting what it knew were suspicious payment orders, by making unauthorized funds transfers from JESCO's accounts, by knowing that the funds transfers were unauthorized and fraudulent, by first representing to JESCO that it would refund all of the unauthorized funds transfers, and then refusing - without any arguable basis - to refund those funds transfers after Wells Fargo, Wells Fargo acted without any regard to the substantial harm and prejudice that its intentional acts would have on JESCO.

33. Despite its knowledge that JESCO reasonably relied on the said representations and agreements, and being aware of its obligations under the contracts and under Mississippi law, Wells Fargo breached and repudiated the contracts. Wells Fargo's conduct breached its obligations to JESCO, prevented JESCO from receiving the benefit of its bargain under

the contracts, and resulted in damages to JESCO.

34.   JESCO is entitled to recover actual and punitive damages, including prejudgment interest, attorneys' fees, and costs incurred in this action.

## Sixth Claim
### Negligent or Intentional Misrepresentations

35.   The allegations of the preceding paragraphs are incorporated by reference.

36.   Alternatively, if JESCO did not satisfy any applicable reporting requirement, it was because Wells Fargo made intentional or negligent misrepresentations to JESCO. Wells Fargo represented to and assured JESCO that Wells Fargo would refund and pay JESCO all of the said unauthorized funds transfers, and JESCO did not need to do anything else in order to be refunded and paid the said monies. Wells Fargo intended that JESCO would believe, rely on, and act on those representations and assurances. JESCO reasonably relied on Wells Fargo's said representations and assurances.

37.   If under the said account agreements JESCO was required to do something else in order to be refunded the amounts of the unauthorized funds transfers, the said material representations and assurances by Wells Fargo were false and misleading, and were negligently or intentionally made by Wells Fargo. Wells Fargo intended that JESCO would believe, rely on, and act on those representations and assurances. JESCO did in fact reasonably believe, rely on and act on those material representations and assurances, to its detriment and prejudice.

38.   As a result of its reliance on Wells Fargo's said false and misleading

11

representations and assurances, JESCO has suffered damages which it is entitled to recover.

39.     JESCO is entitled to recover actual and punitive damages, prejudgment interest, attorneys' fees, and costs for Wells Fargo's misrepresentations.

**Seventh Claim**
**Conversion**

40.     The allegations of the preceding paragraphs are incorporated by reference.

41.     Wells Fargo's payments and transfers of JESCO's said monies from JESCO's First and Second Checking Accounts were unauthorized and constituted a wrongful possession and the exercise of dominion and control over JESCO's monies, to the exclusion of or inconsistent with JESCO's rights to those monies, which has resulted in injury to JESCO.  Wells Fargo has continued to wrongfully retain JESCO's monies despite JESCO's demands for the return of the monies.  Consequently, Wells Fargo is liable for the conversion of JESCO's monies that were wrongfully transferred from the said accounts.

42.     JESCO is entitled to recover all actual damages caused by Wells Fargo's said conversion, plus punitive damages, prejudgment interest, attorneys' fees and all costs incurred.

**Eighth Claim**
**Punitive Damages**

43.     The allegations of the preceding paragraphs are incorporated by reference.

44.     Wells Fargo acted with actual malice or gross negligence, which evidences a willful, wanton, or reckless disregard for JESCO.  Wells Fargo engaged in a course of conduct, which, under these facts, discloses a reckless indifference to their consequences.

Wells Fargo made no effort to avoid these consequences. Wells Fargo should be punished for this behavior so to prevent it from doing this to other bank customers in the future.

**45.** In addition to compensatory damages, JESCO is entitled to recover punitive damages against Wells Fargo for this bad faith and malicious and grossly negligent conduct, which shows a willful, wanton, and reckless disregard for JESCO.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, JESCO prays that this Complaint will be received and filed, summons will issue to the Wells Fargo, a jury trial will be held on all claims and issues, and the Court will enter a judgment for Plaintiff against Wells Fargo for relief that includes the following:

1. A judgment under Miss. Code Ann. Section 75-4A-204 for the principal amount of the unauthorized charges, payment orders and funds transfers by Wells Fargo, interest from the date of each unauthorized funds transfer, all fees and costs charged to JESCO arising out of the unauthorized funds transfers, and all attorney's fees and costs incurred by JESCO.

2. A declaratory judgment that, if any account agreement between Wells Fargo and JESCO requires JESCO to report an unauthorized funds transfer within "30 days" in order to be entitled to a refund, any such requirement is void, illegal and unenforceable under Miss. Code Ann. Section 75-4A-204. Alternatively, any such reporting requirement, if valid, was satisfied by JESCO, or waived by Wells Fargo, or Wells Fargo is equitably estopped to invoke any such reporting requirement.

3. All actual damages that JESCO has suffered or will suffer as a result of Wells Fargo's negligence and gross negligence in accepting the payment orders and making the unauthorized funds transfers, plus prejudgment interest, and all attorney's fees and costs incurred by JESCO.

4. All actual damages that JESCO has suffered or will suffer as a result of Wells Fargo's breach of contract, and its breach of the duty of good faith and fair dealing, plus punitive damages, prejudgment interest, and all attorney's fees and costs incurred by JESCO.

5. All actual damages that JESCO has suffered or will suffer as a result of Wells Fargo's misrepresentations, plus punitive damages, prejudgment interest, and all attorney's fees and costs incurred by JESCO.

6. All actual damages caused by Wells Fargo's conversion of JESCO's monies, plus punitive damages, prejudgment interest, and all attorney's fees and costs incurred by JESCO.

7. Punitive damages in amount sufficient to punish Wells Fargo for its bad faith, gross negligence, and willful and intentional wrongful acts, omissions, and conduct, and its malicious and reckless disregard for JESCO.

8. Prejudgment interest and all attorney's fees and costs incurred by JESCO in this action.

9. Such other general and special relief to which JESCO may be entitled.

This, the 23rd day of April, 2020.

Respectfully submitted,

**JESCO CONSTRUCTION COMPANY**

By: /s/Glenn Gates Taylor
Glenn Gates Taylor (MBN 7453)
Christy M. Sparks (MBN 101381)
**COPELAND, COOK, TAYLOR & BUSH, P.A.**
600 Concourse, Suite 200
1076 Highland Colony Parkway (39157)
Post Office Box 6020
Ridgeland, MS 39158
Telephone: 601-856-7200
Facsimile: 601-707-2999
gtaylor@cctb.com
csparks@cctb.com

**ATTORNEYS FOR PLAINTIFF**