## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**JESCO CONSTRUCTION CORPORATION**                    **PLAINTIFF**

**v.**                                         **Civil No. 1:20cv147-HSO-RHWR**

**WELLS FARGO BANK, N.A.**                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF JESCO CONSTRUCTION CORPORATION'S MOTION [50] FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT WELLS FARGO BANK, N.A.'S MOTION [52] FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are Defendant Wells Fargo Bank, N.A.'s Motion [52]

for Summary Judgment and Plaintiff JESCO Construction Corporation's Motion

[50] for Partial Summary Judgment.  Both Motions are fully briefed. Having

considered both Motions on their merits, the related pleadings, the record, and

relevant legal authority, the Court is of the opinion that Plaintiff's Motion [50] for

Partial Summary Judgment should be granted in part and denied in part, and that

Defendant's Motion [52] for Summary Judgment should be granted in part and

denied in part.

Plaintiff JESCO Construction Corporation will be granted a partial summary

judgment that Wells Fargo is liable to JESCO for the principal amount of

fraudulently transferred funds totaling $269,304.56. Plaintiff's Motion will be

granted in part and denied in part as to the issue of interest, and Plaintiff will be

1

entitled to recover interest on some, but not all, of the transferred funds. Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment will be granted in part, to the extent that JESCO Construction Company's claim for punitive damages will be dismissed, and otherwise denied in part. Plaintiff's remaining state-law claims, with exception of its claim for punitive damages, will proceed.

## I.   BACKGROUND

### A.   Factual background

In June 2016, JESCO Construction Corporation ("JESCO" or "Plaintiff") opened a checking account ("the First Checking Account") at a Biloxi, Mississippi, branch of Wells Fargo Bank ("Wells Fargo" or "Defendant").  Compl. [1] at 3.  Mr. John Shavers ("Mr. Shavers"), the Chief Executive Officer of JESCO, alleges that when he opened the account on JESCO's behalf, the application referred to an "account agreement," but the agreement was not provided to him at the time. Ex. [50-1] at 1.

On September 18, 2019, Mr. Shavers received a telephone call from the fraud department at the bank, notifying him that Wells Fargo believed that JESCO's bank account had been compromised.  *Id.* at 2.  The representative asked Mr. Shavers if JESCO had authorized any payments to a Michael Karkenny, a Stanley Gono, or a Richard Jackowski.  *Id.*  Mr. Shavers responded that he had never heard of these individuals and that JESCO did not have any business with them.  *Id.*  The unauthorized payments amounted to approximately $185,000.00.  Ex. [50-2]. JESCO asserts that the fraud department representative advised Mr. Shavers to

come to a Wells Fargo branch and close the First Checking Account, commenting

that "we (meaning Wells Fargo) know Michael Karkenny." Ex. [50-1] at 3.

Mr. Shavers went to a Wells Fargo branch the next day to close JESCO's

checking account.[1] Ex. [60-1] at 1. He spoke with a Wells Fargo employee, Ms.

Necaise, who informed him that

> [s]he knew what had happened regarding the First Checking Account,
> she would deal with it, and the bank had it under control. While Mr.
> Shavers was present, Ms. Necaise made several phone calls to other
> Wells Fargo personnel (presumably Wells Fargo's fraud department)
> about the unauthorized charges and fund transfers. In answer to Mr.
> Shavers' questions, Ms. Necaise told Mr. Shavers that he did not need
> to do anything else to dispute the unauthorized charges and funds
> transfers other than opening up a new checking account with Wells
> Fargo.

Ex. [50-1] at 2. Mr. Shavers then opened a second checking account (the "Second

Checking Account") for JESCO at Wells Fargo and transferred the remaining funds

from the First Checking Account to the Second Checking Account. Ex. [50-4].

JESCO alleges that shortly after it opened the Second Checking Account, at a

time when Wells Fargo was already aware of the earlier fraud, the bank again

allowed unauthorized transfers from the Second Checking Account to the same

three individuals, Michael Karkenny, Stanley Gono, and Richard Jackowski. *Id.*

These transfers totaled approximately $98,000.00. *Id.* Wells Fargo employees

informed Mr. Shavers of these charges on December 7, 2019, and he disputed them.

Ex. [50-1] at 4. When Mr. Shavers spoke with bank representatives the following

---

[1] Defendant's briefs (Mem. [53] at 7 and Resp. [60] at 10) state that Mr. Shavers did not alert Wells
Fargo about these fraudulent transfers until "September 18 or 19, 2021." The Court will assume
that this was a typographical error, and that Defendant meant to agree with Plaintiff inasmuch as
these events occurred in September 2019.

Monday and Tuesday, the funds had not been returned, and he received conflicting information.  *Id.*  One representative advised Mr. Shavers that Wells Fargo would not refund the unauthorized transfers, while another stated that Wells Fargo would be liable for the unauthorized transfers.  *Id.*  Ultimately, Wells Fargo refunded approximately $15,000.00 to JESCO, but the remaining unreturned fraudulent transfers total $269,304.46.  Ex. [58-1].  JESCO alleges that Wells Fargo has refused to refund the remainder of the transfers on grounds that the account agreement required JESCO to report any unauthorized transfers within 14 days. Mem. [59] at 8.

Wells Fargo takes the position that, under the account agreement, JESCO only had 14 days to report unauthorized electronic funds transfers. Mem. [53] at 4; Ex. [28-6] at 51. It further argues that the account statement which contained details of the fraudulent transfers was made available to JESCO on August 31, 2019, but JESCO did not report the transactions until September 18 or 19, 2019. Ex. [60-1] at 1. By not timely reporting the fraudulent electronic funds transfers, Wells Fargo claims that JESCO "waived its right to reimbursement."  Mem. [53] at 4.[2]

B.    Procedural background

Invoking diversity jurisdiction, JESCO filed suit in this Court against Wells Fargo, advancing eight claims: (1) unauthorized payment orders and funds

---

[2] Defendant does not address the October, November, or December transfers from the Second Checking Account in its Motion [52] for Summary Judgment, nor in its Response [60] to Plaintiff's Motion [50] for Partial Summary Judgment.

transfers; (2) declaratory judgment; (3) negligence or gross negligence; (4) breach of contract; (5) breach of the duty of good faith and fair dealing; (6) negligent or intentional misrepresentation; (7) conversion; and (8) punitive damages. Compl. [1] at 1-13.

Following discovery, JESCO has now filed a Motion [50] for Partial Summary Judgment, seeking judgment as a matter of law that, under Mississippi Code Section 75-4A-204, Wells Fargo is obligated to refund the principal amount of the unauthorized transfers, plus interest. Mem. [51] at 6. In its Response [60], as well as in its own Motion [52] for Summary Judgment, Wells Fargo maintains that its obligations to JESCO were permissibly modified by the account agreement, and that JESCO did not follow the reporting timeline agreed upon in that contract, such that Wells Fargo is entitled to dismissal of JESCO's claims. Mem. [53] at 4. It further argues that Plaintiff's common law claims must be dismissed, because Mississippi's adoption of Article 4A of the Uniform Commercial Code displaces common law claims. *Id.* at 12. JESCO counters that the pertinent statutory obligations in this case could not be modified by agreement, Rebut. [61] at 8, and that there are genuine issues of material fact on its common law claims, Mem. [59] at 24.

II.   DISCUSSION

A.   Summary judgment overview

1.   Relevant legal standards

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the moving party carries its burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  The Court views all facts and inferences in the light most favorable to the nonmovant.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).  "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial."  *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (citing *Celotex*, 477 U.S. at 325).

Where a movant such as JESCO bears the burden of proof on an issue presented for summary judgment, "he must establish beyond peradventure all of

the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Because this case arises under the Court's diversity jurisdiction, the applicable substantive law is that of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 70 (1938). The law of the forum state, Mississippi, is determined by looking to state statutes and decisions of the Mississippi Supreme Court. *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). If there is no caselaw dictating the result under Mississippi law, "this court must forecast how the Mississippi Supreme Court would rule . . . based on Mississippi case law, dicta, general rules on the issue, decisions of other states, and secondary sources." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 392 (5th Cir. 2009).

2.    <u>Defendant's purported issues of material fact</u>

Wells Fargo argues that issues of material fact preclude partial summary judgment in JESCO's favor. Resp. [60] at 2. First, it claims that certain evidence cited in JESCO's Motion [50] constitutes inadmissible hearsay and cannot be relied upon at the summary judgment stage. Wells Fargo specifically refers to Mr. Shavers's Affidavit, Ex. [50-1], which recounts his conversations with bank employees. Wells Fargo takes the position that the alleged conversations recounted by Mr. Shavers are not admissible and do not fall under Federal Rule of Evidence 801(d)(2), which allows the admissions of party-opponents as non-hearsay. Resp. [60] at 2. However, the cases Well Fargo cites in support of its position are distinguishable, as they involved unidentified employees or cases where there was a

7

lack of evidence sufficient to establish agency. *Id.* at 3 (citing *Ungerbuehler v. FDIC*, 2010 U.S. Dist. LEXIS 98563 (E.D. Ky. Sept. 20, 2020); *Cohen v. Target Corp.,* 567 S.E. 2d 733, 735 (Ga. App. 2002)).

Here, the summary judgment record reflects that Mr. Shavers spoke with identifiable employees who arguably had an agency relationship with the bank on topics within the scope of their employment, such as the employee who called Mr. Shavers from the Wells Fargo fraud department, *id.*, and Ms. Necaise, the bank employee who helped Mr. Shavers open the Second Checking Account, Ex. [60-1] at 1. This is sufficient to render the statements competent evidence for purposes of summary judgment. *See Goode v. City of Southaven,* No. 3:17-CV-60-MPM-RP, 2019 WL 1089490, at *6 (N.D. Miss. Mar. 7, 2019) (allowing statements where the plaintiff could identify the declarant as an employee of the defendant and the statement involved a matter within the scope of the declarant's employment).

Wells Fargo also argues in its brief that there is a question of fact regarding whether the transfers themselves were in fact fraudulent, and whether they were authorized by JESCO. Resp. [60] at 6. However, despite the opportunity to conduct discovery on this question, Wells Fargo has presented no competent summary judgment evidence to support this argument or to indicate that JESCO authorized these payments. By contrast, JESCO has presented competent evidence that JESCO did not authorize the transactions, and that Wells Fargo was familiar with the persons who fraudulently charged the First Checking Account. *See* Ex. [58-6] at 2. Additionally, JESCO has presented a letter from Wells Fargo acknowledging that

8

"the investigation has been completed and we have determined that the transactions were not authorized by you." Ex. [58-4] at 3.

To support its argument that JESCO did in fact authorize the transfers, Wells Fargo offers only a brief mention, without citation to any evidence, of the fact that the fraudulent activity quickly continued on the new account. Resp. [60] at 6. On the present summary judgment record, this amounts to speculation that JESCO authorized the transfers. This is not enough to create an issue of material fact on whether the transfers were authorized, and "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). Conclusory allegations and unsubstantiated assertions are not enough for a nonmovant to defeat a motion for summary judgment, *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996), but that is exactly what Wells Fargo proposes the Court rely upon by arguing, without any evidence, that perhaps the transfers were not fraudulent at all. The Court now turns to the merits of the parties' substantive legal arguments.

B.    JESCO's UCC claim

1.    The parties' legal arguments

Wells Fargo argues that JESCO is not entitled to a refund of the fraudulent transactions because JESCO did not report them to Wells Fargo within 14 days – the time frame agreed upon in the account contract.  Mem. [53] at 6.  JESCO counters that Wells Fargo is in fact liable, because Article 4A of Mississippi's

9

version of the Uniform Commercial Code prohibits parties from modifying by

agreement the amount of time that a party has to report fraudulent transactions.

Mem. [51] at 8 (citing Miss. Code Ann. § 75-4A-204). According to JESCO,

Mississippi Code § 75-4A-505 gave it one year to report these transactions, and this

limitations period could not be modified by agreement. *Id.* at 11.

Mississippi Code § 75-4A-204 provides that:

(a) If a receiving bank accepts a payment order issued in the name of its customer as sender which is (i) not authorized and not effective as the order of the customer under Section 75-4A-202, or (ii) not enforceable, in whole or in part, against the customer under Section 75-4A-203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund. However, the customer is not entitled to interest from the bank on the amount to be refunded if the customer fails to exercise ordinary care to determine that the order was not authorized by the customer and to notify the bank of the relevant facts within a reasonable time not exceeding ninety (90) days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order. The bank is not entitled to any recovery from the customer on account of a failure by the customer to give notification as stated in this section.
(b) Reasonable time under subsection (a) may be fixed by agreement as stated in Section 75-1-302(b), but the obligation of a receiving bank to refund payment as stated in subsection (a) may not otherwise be varied by agreement.

Miss. Code Ann. § 75-4A-204 (West 2010).

JESCO maintains that § 4A-204(b) means that parties may contract as to

what a "reasonable time" is for purposes of a bank's responsibility to pay interest,

but that a bank must still nevertheless refund the unauthorized payment itself,

regardless of any time frame agreed upon in a separate contract or deposit agreement.  Mem. [51] at 9.

Wells Fargo takes the position that account agreements can vary the obligations imposed by § 4A-204, and that the account agreement in this case did just that.  Mem. [53] at 4 (citing Ex. [28-6] at 51).  It contends that the account agreement shortened the time period for notifying the bank of fraudulent transfers to within 14 days of receiving notice from Wells Fargo about the transaction, such that if JESCO failed to notify Wells Fargo of any fraudulent transfers within 14 days of receiving its account statement, JESCO was not entitled to receive a refund of those transfers.  *Id.*

Wells Fargo claims that, because the account statement for the First Checking Account was made available on August 31, 2019, and Mr. Shavers did not report the fraudulent transactions in the First Checking Account until September 18 or 19, 2019, more than 14 days elapsed and JESCO is not entitled to receive a refund.  Mem. [60] at 10. Similarly, fraudulent transactions began on the Second Checking Account on September 20, 2019, and Mr. Shavers did not report them to Wells Fargo until December 7, 2019, long after the 14 day period had expired. Mem. [53] at 2.

Wells Fargo contends that the account agreement constitutes a permissible variation of the obligations imposed by § 4A-204, and that § 4A-204(b) implicitly allows the time period for the customer to notify the bank to be modified. Mem. [53]

11

at 4.  Defendant maintains that § 4A-505 and § 4A-501 further support its position.
*Id.* at 7.

2.  <u>Analysis</u>

a.  <u>Mississippi's adoption of Article 4A of the Uniform Commercial Code</u>

The parties agree that this dispute arises under Mississippi's version of
Article 4A of the Uniform Commercial Code ("UCC"). Mississippi has adopted and
codified Article 4A of the UCC at Mississippi Code § 74-4A-101, et seq. *Union
Planters Bank, Nat. Ass'n v. Rogers*, 912 So. 2d 116, 120 (Miss. 2005); *see also
Redsands Energy, LLC v. Regions Bank*, 442 F. Supp. 3d 945, 952 (S.D. Miss. 2020).
While comments to uniform laws are not adopted by the legislature, where such
laws have been adopted verbatim, Mississippi courts will look to the official
comments to clarify the meaning of those laws.  *Holifield v. BancorpSouth, Inc.*, 891
So. 2d 241, 248 (Miss. Ct. App. 2004); *see also Nat'l Bank of Com. v. Shelton,* 27 So.
3d 444, 449 (Miss. Ct. App. 2009) ("Having found no variation between Mississippi's
version of Article 4A and the model version, we find the official comments of the
UCC instructive.").

b.  <u>The obligation to refund the transfer</u>

Because Mississippi has adopted § 4A-204 verbatim, *Holifield*, 891 So. 2d at
248, the official comments to § 4A-204(b) are instructive:

> The only consequence of a failure of the customer to perform this duty
> [to monitor his or her account] is a loss of interest on the refund payable
> by the bank . . . Loss of interest is in the nature of a penalty on the
> customer designed to provide an incentive for the customer to police its
> account. There is no intention to impose a duty on the customer that

might result in shifting loss from the unauthorized order to the customer.

Miss. Code Ann. § 75-4A-204, cmt. 2 (West 2010).

Mississippi Code § 75-4A-505 imposes a one-year time limit for a customer to report fraudulent transactions, as follows:

> [i]f a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one (1) year after the notification was received by the customer.

Miss. Code Ann. § 75-4A-505 (West 2010).

Wells Fargo contends that § 75-4A-501(a) of the Mississippi Code permits parties to modify this one-year deadline by separate agreement, and that the parties in this case agreed to do so. Mem. [53] at 5 (citing Ex. [28-6] at 51). That section of Mississippi's UCC provides that, "[e]xcept as otherwise provided in this chapter, the rights and obligations of a party to a funds transfer may be varied by agreement of the affected party." Miss. Code Ann. § 75-4A-501(a) (West 2010). Wells Fargo maintains that when § 4A-501(a) and § 4A-505 are read together, it becomes clear that a bank and its customer may contractually modify the one-year time limit set forth in § 4A-505. Mem. [53] at 5. In support of this proposition, Wells Fargo cites *Steffes v. Heritage Bank NA-Willmar,* No. C9-01-1940, 2002 Minn. App. LEXIS 737 (Minn. Ct. App. 2002) (Westlaw citation *Bonnema v. Heritage Bank NA-Willmar*, No. C9-01-1940, 2002 WL 1363985 (Minn. Ct. App. June 19, 2002)).

The Court in *Bonnema* found that the appellant, Steffes, was barred from asserting a claim for conversion after a bank fraudulently transferred funds, for two reasons. First, Steffes learned about the fraudulent transfer almost five years before commencing his lawsuit and had not notified the bank of his objections prior to filing suit, placing the transfers well outside of the one-year limitations period afforded by Article 4A. *Bonnemma,* 2002 WL 1363985 at *5. Second, the account agreement between Steffes and the bank set a 30-day limitation on challenging fraudulent transfers. *Id.* at *3. Without addressing whether the 30-day limitation was permissible under § 4A-204, the Court stated without explanation that,

> Article 4A also provides that the parties may vary by agreement 'the rights and obligations of a party to a funds transfer.' Minn. Stat. § 336.4A-501 (2000). The 30-day limitation period in the account agreement therefore time-barred Steffes's conversion claim.

*Id.* at *5.

The Court concluded that "either the 30-day account limitation or the UCC statute of limitations regarding funds transfers barred Steffes's conversion claim." *Id.*

The Court is not persuaded by Wells Fargo's argument. When analyzing the statutory framework as a whole, it becomes clear that Mississippi Code § 75-4A-501 and § 75-4A-505 are meant to interact with § 4A-204. In fact, the comments to § 4A-505 cite to § 4A-204 for the proposition that "the receiving bank is obliged to refund the [fraudulent] payment to the customer and *this obligation to refund payment cannot be varied by agreement*." Miss. Code Ann. § 75-4A-505 cmt. 1 (West 2010) (emphasis added); *see also Regatos v. N. Fork Bank*, 257 F. Supp. 2d 632, 644

14

(S.D.N.Y. 2003), *aff'd Regatos v. N. Fork Bank*, 431 F.3d 394 (2d Cir. 2005)

("Consideration of the structure of Article 4A, along with its underlying purpose and

policies, leads to the conclusion that the drafters did not intend to permit a bank

and its customer to vary the one year notice period by agreement.").

Mississippi Code § 75-4A-204(b), in turn, explicitly states that the obligation

of a bank to refund payments as stated in § 4A-204(a) "may not be otherwise be

varied by agreement." Miss. Code Ann. § 75-4A-204(b) (West 2010). This supports

the conclusion that § 4A-204's requirement that a bank refund fraudulent payments

could not be varied by agreement under § 4A-501, or by the account agreement in

this case.  Pursuant to Mississippi Code § 75-4A-505, JESCO had one year to report

the fraudulent charges to Wells Fargo in order to obtain a refund of the principal

amount of the unauthorized transfers. The undisputed summary judgment evidence

reflects that JESCO did so.

Courts in other jurisdictions that have adopted the UCC have reached

similar conclusions under similar circumstances. *See, e.g.*, *Regatos,* 257 F. Supp. at

643. In *Regatos,* the plaintiff sued his bank when it refused to refund unauthorized

transfers.  *Id.* at 637.  In its defense, the bank cited its account agreement, which

required customers to object to any disputed transactions within 15 days.  *Id.* at

638.  The court determined that under the UCC, the account agreement could not

vary the bank's obligation to refund fraudulent transfers, stating that

> a very short notice period would effectively eviscerate the absolute duty
> created by sections 4–A–202 and 4–A–204. Similarly, section 4–A–204
> explicitly states that a customer's failure to give notice will not disturb
> her right to refund, and that provision may not be varied by agreement

. . . The Official Comment indicates that the drafters were cognizant of the interplay between the one-year notice provision of section 4–A–505 and the duty to refund provisions of 4–A–202 and 4–A–204. But neither the statute nor the Official Comments discuss the ability to vary the one-year notice provision by agreement without fundamentally disturbing the invariable refund provisions.

*Id.* at 643.

After analyzing the purpose of the statute and finding that the allocation of loss caused by fraudulent transfers "is so integral to the structure of Article 4A that it may not be varied by contract," *id.*, the court determined that "consideration of the structure of Article 4A, along with its underlying purpose and policies, leads to the conclusion that the drafters did not intend to permit a bank and its customer to vary the one-year notice period by agreement," *id.* at 644.

Courts in other UCC jurisdictions have cited to *Regatos* with approval in finding that the one-year notice period cannot be varied by agreement. *See, e.g., Elliot v. First Tennessee Bank, N.A.,* No. 05-2175 ML/P, 2007 WL 9706178, at *4 (W.D. Tenn. Feb. 7, 2007) ("this Court agrees with New York State's high court that '[t]he period of repose in section [4A-505] is essentially a jurisdictional attribute of the "rights and obligations" contained in [section 4A-204]. To vary the period of repose would, in effect, impair the customer's section [4A-204] right to a refund, a modification that section [4A-204] forbids.' *Regatos*, 5 N.Y. 3d at 403.").

Based on the plain language of the statute, and informed further by the Comments and other persuasive authority, the Court concludes that the one-year notice period for reporting fraudulent transactions and obtaining a refund of the principal amount of the transfers could not be modified by agreement under

Mississippi's version of the UCC. Because Wells Fargo has not created a genuine dispute of material fact that these transfers were unauthorized or that JESCO reported them within one year, and because JESCO has established beyond peradventure an entitlement to partial summary judgment on this claim, JESCO is entitled to a judgment in the principal amount of the transfers which have not yet been refunded, $269,304.46. Ex. [58-1].

c.   The recovery of interest

Turning to issue of interest, Mississippi Code § 75-4A-204(a) provides that

> the customer is not entitled to interest from the bank on the amount to be refunded if the customer fails to exercise ordinary care to determine that the order was not authorized by the customer and to notify the bank of the relevant facts within a reasonable time not exceeding ninety (90) days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order.

Miss. Code Ann. § 75-4A-204(a) (West 2010). "Reasonable time under subsection (a) may be fixed by agreement . . ." Miss. Code Ann. § 75-4A-204(b) (West 2010). The phrase "[r]easonable time is not defined and it may depend on the facts of the particular case." Miss. Code Ann. § 75-4A-204 cmt. 2 (West 2010).

Mr. Shavers states in his Affidavit that when he opened the account at Wells Fargo, the account agreement was referenced in the contract but was not provided for him to review. Ex. [50-1] at 1. He does not dispute that the contract existed, only that he was unaware of what he was signing. *Id.* However, ignorance of the specific terms of a contract is no defense under Mississippi law, which "creates a duty on contracting parties to read their contracts, and imputes the knowledge of that

contract to the parties. Once signed, the written terms of the contract control."
*Anderson v. Equitable Life Assur. Soc. of U.S.*, 248 F. Supp. 2d 584, 590 (S.D. Miss.
2003) (citing *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber
& Supply Co., Inc.*, 584 So. 2d 1254, 1257 (Miss.1991)). Moreover, JESCO is
pursuing a breach of contract claim in this case. As such, JESCO is bound by the
terms of the account agreement.

JESCO argues that Wells Fargo previously claimed that the time limitation
set forth by the parties' agreement was 30 days, Ex. [28-6] at 3, but that Wells
Fargo has changed its position and now claims it was 14 days, Mem. [53] at 4. The
record reflects that Senior Counsel at Wells Fargo Legal did state in a letter to
JESCO that the relevant time period for reporting the transaction was 30 days, Ex.
[28-6] at 3; however, upon examination of the account agreement itself, it is clear
that this was a mistake, as the section of the agreement governing electronic
transfers plainly sets 14 days as the time limitation, Ex. [28-6] at 51.[3]

Specifically, the account agreement provides that account holders must

exercise ordinary care to determine whether a funds transfer to or from
your account was either not authorized or erroneous, and you will notify
us of the facts within a reasonable time not exceeding 14 days after you
have received notice from us that the instruction or order was accepted
or your account was debited or credited for the funds transfer, whichever

---

[3] JESCO urges the Court to estop Wells Fargo from "changing its argument at this late date in the
case." Mem. [59] at 19. Judicial estoppel is not applicable on these facts. The elements necessary to
invoke judicial estoppel are "(1) the position must be clearly inconsistent with one taken during
previous litigation; (2) the court must have accepted and relied on the previous position; and (3) the
party must not have inadvertently taken the inconsistent position." *Gibson v. Williams, Williams &
Montgomery, P.A.*, 186 So. 3d 836, 846 (Miss. 2016). "When the party asserting the prior inconsistent
position has not *benefitted* by the assertion, the doctrine should not be applied." *Id.* Because Wells
Fargo has not benefitted, and because JESCO has not shown that the Court accepted and relied
upon this position, the elements of judicial estoppel are lacking.

is earlier. You must notify us within 14 days to be entitled to a refund from us. If you do not notify us within 14 days, we will be entitled to retain payment for the funds transfer.[4]

Ex. [28-6] at 51.

Courts have enforced similar time limits under similar circumstances.  For example, courts have upheld 14 day limitations where customers lived abroad, travelled frequently, and did not always have access to their mail, *see Elliot*, 2007 WL 9706178 at *6, and under circumstances where bank customers had their account statements stolen and were lied to about why the statements were not delivered, *Borowski v. Firstar Bank Milwaukee, N.A.*, 217 Wis. 2d 565, 572 (Wis. Ct. App. 1998). The Court concludes that, as to the recovery of interest, this time limitation was reasonable and is therefore enforceable.

Based upon the summary judgment record, there can be no genuine dispute of material fact that JESCO reported the fraudulent transfers from the First Checking Account within the 14 day period. According to Wells Fargo, it mails account statements at the end of each month, and statements are considered received on the second business day after mailing. Ex. [28-6] at 15. The account statement for the First Checking Account contained information through the end of the day on August 31, 2019, which was the Saturday before Labor Day, so the account statement could not have been mailed until September 3, 2019, and JESCO was deemed to have received it two business days later, on September 5, 2019.  Ex. [58-8] at 2. When Mr. Shavers received a call from Wells Fargo's fraud department,

---

[4] The Court has already determined that this 14 day limit did not apply to the principal amount of the transfers. However, it can apply to the recovery of interest.

and informed Wells Fargo that the transfers were unauthorized on September 18, 2019, this was still within 14 days of September 5, 2019. *Id.*

However, the fraudulent charges that occurred on the Second Checking Account took place over a longer period of time, from September 20, 2019, until December 10, 2019. Ex. [50-2]. Mr. Shavers did not report these until December 7, 2019. Ex. [50-4]. With a December 7, 2019, reporting date, the transactions in the Second Checking Account that occurred in September and October were not reported until well after the September and October statements were provided to JESCO and well after the 14 day time period had passed, such that JESCO cannot collect interest on those fraudulent transfers from the Second Checking Account. Ex. [50-2].

The November account statement would have been mailed on December 3, 2019, because the last day of November was a Saturday. After allowing two business days for mailing, JESCO had until December 19 to report the transfers, and did so on December 7, 2019. Additionally, Mr. Shavers reported the December transactions before the account statement for December was created. Therefore, the November and December transfers were reported within the 14 day time limit, and JESCO can collect interest on those fraudulent transfers from the Second Checking Account. Ex. [50-2] at 2.

"It is implicit that the interest will accrue until the date of refund." *Nat'l Bank of Com.*, 27 So. 3d at 451. Therefore, Plaintiff is entitled to interest on the First Checking Account's fraudulent transfers, and the November and December

20

transfers from the Second Checking Account, in an amount to be calculated in accordance with Mississippi Code § 75-4A-506. JESCO's Motion will be granted in part and denied in part on the issue of interest

C.    JESCO's other state-law claims

The Complaint [1] also advances claims for declaratory judgment, negligence and gross negligence, breach of contract, breach of the duty of good faith and fair dealing, negligent or intentional misrepresentations, conversion, and punitive damages. Compl. [1] at 7-12. Defendant contends that Mississippi's adoption of Article 4A displaces Plaintiff's common law claims.  Mem. [53] at 12.  However, Mississippi did not automatically eliminate all common law claims when it adopted Article 4A. Miss. Code Ann. § 75-1-103 (West); *see Newsome v. Peoples Bancshares*, 269 So. 3d 19, 33 (Miss. 2018) ("In order for the UCC to apply over common law, the UCC must specifically displace common law.").  Under Mississippi law, Article 4A will displace a common law claim only if it "directly addresses or specifically covers the allegations." *Langston & Langston, PLLC v. SunTrust Bank*, No. 3:18-CV-741-CWRFKB, 2020 WL 4907220, at *2 (S.D. Miss. Aug. 20, 2020) (citations omitted).

Mississippi Code § 75-4A-204(a) "does not provide that it shall be the exclusive remedy for unauthorized funds transfers." *Miller v. Union Planters Bank, N.A.*, No. CIVA 205CV2144KSMTP, 2006 WL 3391095, at *3 (S.D. Miss. Nov. 22, 2006).  In a case involving fraudulent checks, *Miller* found that the plaintiff's common law claims for negligence, breach of contract, breach of fiduciary duty,

conversion, gross negligence, and negligent supervision were not inconsistent with Article 4A, but that a claim for punitive damages was. *Id.* at \*4.

As in *Miller,* the Court finds that JESCO's claims for declaratory judgment, negligence or gross negligence, breach of contract, breach of the duty of good faith and fair dealing, negligent or intentional misrepresentation, and conversion are not inconsistent with or otherwise prohibited by Article 4A. No particular provision of Article 4A displaces these claims, and "courts do not read Article 4A as automatically preempting state law claims." *Id.* at \*3. Wells Fargo has not pointed the Court to any specific Article 4A provision that explicitly prohibits the remedies JESCO is seeking, thus summary judgment would not be appropriate on these claims. *See* Miss. Code Ann. § 75-1-103(b) (West 2013) ("*Unless displaced by the particular provisions of the Uniform Commercial Code,* the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.") (emphasis added).

JESCO's common law claims present material fact questions for a jury to resolve.  For instance, it is unclear whether Wells Fargo made misrepresentations to Plaintiff about whether the Second Checking Account would be protected from fraudulent charges, or whether Wells Fargo knew or should have known that the transfers from the Second Checking Account were fraudulent.

As to JESCO's claim for punitive damages, however, under the facts of this case, this claim is barred by both the UCC and Mississippi law. Mississippi courts have held that the UCC specifically provides that "neither consequential or special nor penal damages may be had except as specifically provided in this code or by other rule of law." *Berhow v. The Peoples Bank*, 423 F. Supp. 2d 562, 568 (S.D. Miss. 2006) (citing Miss. Code Ann. § 75–1–106(a) (1972)); *see also Hancock Bank v. Ensenat*, 819 So. 2d 3, 11 (Miss. Ct. App. 2001) (citing comments to Miss. Code Ann. § 75–1–106(a) (1972)).  Courts have refused to award punitive damages to plaintiffs in cases alleging fraudulent transfers of funds.  *See Miller*, 2006 WL 3391095, at *4.

In addition, punitive damages are otherwise "disfavored under Mississippi law and are reserved for extreme cases." *Watson v. Johnson Mobile Homes*, 284 F.3d 568, 571 (5th Cir. 2002). The Mississippi punitive damages statute provides that

> [p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss. Code Ann. § 11-1-65(1)(a) (West).

Punitive damages are reserved for cases where a plaintiff can show "insult, fraud or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others." *Wise v. Valley Bank*, 861 So. 2d 1029, 1034 (Miss. 2003) (citations omitted).  Punitive damages are allowed by Mississippi courts only "where the facts are highly unusual and the cases extreme." *Id.* (citations omitted). Here, JESCO has not presented sufficient evidence from which a

reasonable jury could conclude by clear and convincing evidence that Wells Fargo's conduct was so extreme as to justify an award of punitive damages. *See, e.g., Cmty. Bank, Ellisville, Mississippi v. Courtney*, 884 So. 2d 767, 777 (Miss. 2004) (holding that punitive damages were not appropriate in a suit alleging conversion, even when party presented evidence that a bank employee threatened to put him out of business). Based on the foregoing, Wells Fargo's Motion will be granted in part as to JESCO's claim for punitive damages. Its Motion should be denied in all other respects.

## III.   CONCLUSION

To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. Based upon the summary judgment record presented to the Court, Plaintiff's Motion [50] for Partial Summary Judgment should be granted in part and denied in part, and Defendants' Motion [52] for Summary Judgment should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff JESCO Construction Corporation's Motion [50] for Partial Summary Judgment is **GRANTED IN PART**, and Plaintiff is entitled to a partial summary judgment on its UCC claim against Wells Fargo in the principal amount of the funds transferred, $269,304.56, plus interest on the amount of the funds transferred from the First Checking Account and interest on the funds transferred from the Second Checking Account in November and December 2019. JESCO's Motion is **DENIED**

24

**IN PART** as to its UCC claim for interest on the funds transferred from the Second Checking Account in September and October 2019.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Wells Fargo Bank, N.A.'s Motion [52] for Summary Judgment is **GRANTED IN PART,** in that JESCO's claims for punitive damages will be dismissed, and **DENIED IN PART**, as to JESCO's UCC claim and its other state-law claims.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff JESCO Construction Corporation's claim for punitive damages is **DISMISSED WITH PREJUDICE.**

**SO ORDERED AND ADJUDGED**, this the 12th day of January, 2022.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

25